Case No. 313-0294, Validated with Case No. 313-0310, Carolina Casualty Insurance Company, Adelaide v. Jason Orleans, Dean Henry Lynn v. Black, Code L. Redflags v. Russ King, Adelaide v. David Lewin, C.A. Travis International, Adelaide v. Mark Stopchak, V.S.A. of Joseph and Susan Sperl, and the estate of Thomas and Annette Sanders, accounts by David Lynch. Mr. Lynch, good morning. Morning, Madam. May it please the Court, Your Honors, Counsel, my name is Dennis Lynch along with Martin Healy. We represent Susan Sperl. John and Tim Cantlin, who represent Sanders, have graciously yielded their time. Your Honors, in this case, Sperl and Sanders were dismissed from this interpleader proceeding despite the fact that they asserted they were claimants to the interpled insurance funds and despite the fact that they attempted to pursue a counterclaim for breach of contract based on CCIC, Henry's, and Dragonfly's failure to pay their insurance policy proceeds or a portion of those proceeds as promised. The Circuit Court's dismissal and denial of leave to file came without any explanation as to its basis, neither in the original order as requested at a subsequent status hearing or in ruling on the motion to reconsider filed by Sperl and Sanders. Reversal is warranted in this case for either one or both of the separate issues advanced. One, that Sperl and Sanders were proper claimants to the interpleader because they were still owed a portion of the underlying judgment, or two, that leave to file a breach of contract counterclaim should have been allowed. As to both issues, it is important to note that Sperl and Sanders were not required to prove their claims on the merits at this stage. Instead, so long as plausible claims could be asserted, the Circuit Court should have allowed them to remain as part of the interpleader and should have allowed the breach of contract counterclaim to go forward. As to the first issue, the Circuit Court erred in dismissing Sperl and Sanders from the interpleader. This Court's review of that issue should be de novo, although it was on a motion to voluntarily dismiss. Given the facts of this case, it really should be viewed the same as any other motion to dismiss would be. The dismissal of Sperl and Sanders really runs entirely contrary to the point of an interpleader. The whole purpose of an interpleader is to bring all potential claimants together, rule on the merits of each claim, and prevent the stakeholder, in this case CCIC, from the threat of multiple liability. Hadn't the trial court already determined that your clients had been paid everything they were owed? Well, the trial court in the wrongful death case, Judge Garrison, had granted C.H. Robinson's judgment notwithstanding verdict on the conscious pain and suffering portion of the jury award. But Drag and Fly and Henry, who are CCIC's insurers, never filed a post-trial motion. They never challenged the jury's verdict in any way. And so the verdict as to them was already locked in, so to speak. It was a final verdict. Once 30 days elapsed and they had not filed that post-trial motion, they could not really seek the benefit that arose from C.H. Robinson's subsequent relief. Was it a factual determination by the court? As to the viability of the conscious pain and suffering, it was. He determined there was insufficient evidence. And there was initially a cross-appeal filed on that matter by us and by Sanders. However, it was subsequently dismissed once the briefing came in. It became clear that Drag and Fly and Henry would remain liable for that portion of the verdict, and there was really no reason to also have to seek that determination vis-à-vis C.H. Robinson. The issue that kind of keeps coming, that is a little disjointed, is obviously Judge Garrison had determined whether that conscious pain and suffering award should survive, but Drag and Fly never challenged that award. This is a little strange, though, because in this case, you know, the broad unit judgment rule has really not stayed the course in this state, given the Chmielewski case. And in this case, if you've got the trial judge finding there was no evidence to support any judgment in this thing, then how would it ever possibly stand on the other two? And then, ergo, the estate has no interest in anything, and that's why you were dismissed out of the interpleader. There was no interest in any money, because there was no evidence of it. And I think the problem, Your Honor, is that Drag and Fly and Henry, I think for good reason, chose to never challenge any portion of the jury's verdict. I understand that, but if you've got a finding by the trial judge, how could any judgments against the two of them stand when you have a finding by the trial court that there's no evidence to justify those judgments? Because that finding was too late to be of any benefit to Drag and Fly and Henry. If it had been made within 30 days of the jury verdict, then there could be some relief granted to them. So you believe technically they're stuck even though at trial there was no evidence to support any of this, and the others vacated. You know, that's applying an older standard, isn't it? Not a newer standard on... I don't think the issue of whether it's a unit or not is the true issue. I think the question is, did they have to file a post-trial motion in order to seek relief? And none of the cases pre-1935, when a judgment was a unit, or since then, have allowed a party who has not filed a post-trial motion to seek relief based on another party's post-trial motion. Everyone's responsible for filing their own motion. Now certainly there's issues, and the majority of the cases cited on the other side involve a situation where either a plaintiff or defendant seeks a new trial as to all parties because of some trial error. But that's a different issue where there's actually affirmative relief requested against both parties, and even if it was only one party who induced the error in closing statement, for instance. You know, what I'm looking at is in the Chmielewski case, the statement is made, we hold, therefore, that when a judgment or decree against two or more defendants is vacated as to one of them, it need not for that reason alone be vacated as to any of the others. It should not be vacated as to any of the others unless it appears that because of the interdependence of the rights of the defendants or because of other special factors, it would be prejudicial and inequitable to leave the judgment standing against them. And, you know, in this case, there's a finding that there is no evidence to support that judgment, and arguably, therefore, those two defendants fit into that unless statement. But I think the interdependence ends when Dragonfly and Henry chose not to file a post-trial motion. They chose to be responsible for that jury verdict without question. And so certainly they could have filed a post-trial motion, they could have appealed, but they chose not to. And by doing that, that's what kind of creates the split that otherwise would not occur between them and C.H. Robinson. You know, again, there's no authority that's been cited that's really allowed a party this relief without ever questioning it. Well, the question I'm asking is the fact that there was no evidence to support this, a special factor, which would render it prejudicial and inequitable to leave the judgment standing against them. It's not in this case because they chose not to challenge that evidence themselves. So a judgment would be enforced despite the fact that no evidence exists to support that judgment. Correct, because they chose not to challenge it. So, I mean, they obviously have the right to litigate the case how they choose, and they chose not to. Wouldn't that be procedural form over the substance of the facts? I don't think, again, I think that would have been an argument potentially to be raised after Judge Garrison had ruled in a more timely fashion. You know, I think potentially a 214.01 petition could have been brought, basically arguing that they had this valid defense that they would have otherwise raised. But to never raise the argument, to send a letter after the post-trial motion has been granted in that respect, still offering without qualifications payment, I don't think they can then claim that they're being prejudiced by the fact that there was, according to Judge Garrison, no evidence on those points. You know, the question is, you know, did they choose to fight it or not, and they didn't. If theoretically all the judgments were vacated, then there would be nothing left for the estates to obtain in the interpleader action, isn't that right? Well, I think that you get into an issue because of the breach of contract claim and the Callis, the Callis v. Colgate case, where even if this court decides on the merits that the claim would normally be invalid, that the $250,000 was not owed, because of the contract issues in the Callis case, so long as there was a good faith dispute as to whether those claims have been owed, I think there's still a factual question as to the breach of contract claim to go forward. And that's really the same thing that happened in Callis, was an offer without any qualifications had been made before judgment, before a summary judgment motion had been entered, summary judgment was granted, the plaintiff subsequently accepted that settlement offer, and the determination on appeal was that there is at least a factual question as to a valid contract, so long as there's a good faith dispute on a claim, even if that claim is ultimately found to be invalid. But aren't those claims based on the assertion that the survival awards still stand against Henry and Dragonfly? Well, yes and no. I mean, certainly if the survival awards stand, then there's absolutely a valid contract to file the claim. Even if the survival awards do not stand, so long as there was a good faith argument that they did, I think there would still at least be a factual question. What would the factual question be? What would be the good faith contention if they don't stand? The same as any other settlement that the parties are trying to resolve a dispute between themselves, and whether that claim would ultimately be successful doesn't factor into the question, so long as there's a good faith dispute that a case is out there that can be resolved. It can be resolved by way of settlement in an enforceable contract. Again, that was the situation in Calis. Even though a summary judgment had been entered against plaintiffs, the court found that there was potentially a contract for settlement available because the offer was unqualified and never revoked. And in this case, what's the good faith factor if there's no survival claim? Well, I think the volume of briefing in this case demonstrates that there's at least some good faith dispute as to whether that survival claim survived, vis-a-vis Dragonfly and Henry. So it's the weight of the arguments? It is. It is. I think that the length of proceedings below this very appeal demonstrates that there's some debatability as to whether that claim is out there as to Henry and Dragonfly. So even if the court determines that that claim ultimately wasn't successful, I think there's still enough information in there to create at least a jury question, a factual question, as to whether the contract should have been allowed. Back to the beginning with regard to the standard of review, there are cases that indicate that this would be an abuse of discretion. Well, as far as the voluntary dismissal alone is concerned, the only cases that talk in terms of abuse of discretion are where there's a question of whether a motion for voluntary dismissal should be taken before a dispositive motion. And in those instances, the trial court has the discretion to determine basically what motion am I going to rule on first. I'm not aware of any authority in this sort of circumstance where a voluntary dismissal has been appealed that would hold that that is a discretionary call. I think specifically in this case where the trial court did not state her basis, including after being given a couple of options to do so, that discretionary review would not be appropriate because we don't know what discretion the trial court applied. So I think as to really both issues, de novo review is appropriate in this case. And certainly to the extent that questions of law are raised as to whether that survival award is still valid against Dragonfly and Henry, that would be a terrible offer. There's no case law clearly going one way or the other on this, is there? I would agree with that. Yeah, absolutely. But again, I think given the lack of findings by the trial court, it's really a de novo situation. Mr. Lynch, I understand the procedural argument that you're making. One of the things that troubles me is that the net effect, if we agree with you, is that we have totally inconsistent factual determinations within this case. Well, I don't know that it's truly a factual determination. I think it goes back to one party chose to fight that jury award and one didn't. So really the question of whether that claim was factually valid, I think, is kind of behind us. The issue now is, does Dragonfly and Henry's failure to file a post-trial motion mean they're stuck, so to speak, with that judgment? But the only way that the trial court can make an award is on a finding that there was evidence to support the pain and suffering in the survival action. And it's already made a determination that there is none with regard to another party. That is true, but the jury had made a finding that there was sufficient evidence and Dragonfly and Henry agreed to be bound by that finding by not filing a post-trial motion. Or joining in C.H. Robinson's ever-seeking any other type of relief. Did they go beyond that, though? They not only didn't fight it, they agreed to pay? Well, right, they made an offer to pay without any qualifications. It wasn't accepted at the time? It wasn't accepted at that time, but it was accepted. After the trial court ruled? Sure. Well, the second written offer was after the post-trial motion had been ruled on. And it simply, without qualification, stated, we have not filed a post-trial motion, we will not appeal, let me know how you want this money divided up. And that was subsequently accepted in writing with instructions as to how the payments were to be drafted. Was that communicated by an attorney? Yes, yes. Both the offer and acceptance were communicated by counsel for the various parties. And both the offer and acceptance are in writing. And your position is that the other side has conceded they owe the money? Well, I think the… That's your position? Right. I mean, the offer was out there in an unqualified way, and it was accepted. And obviously the, you know, the equities involved, CCIC is the insurer who actually insured the driver who physically caused the death and the multiple property damages here. And essentially they're asking to not have to pay anything as a result of the accident that their driver caused. So I think there was a concession from the time the interpreter was filed and at all other relevant times that they, you know, owed their portion of the policy. Thank you. There was a question asked about, you know, essentially a form over substance situation. And I think, you know, there's a couple areas in civil procedure that are kind of sacred. And statute of limitations, post-trial motion, and notice of appeal are kind of those three. And regardless of the merits of any claim, if you kind of fail to follow those procedural thresholds, you can see your claim go away or not be brought into existence. And I think that's really the situation at the heart of this case is Dragonfly and Henry, I think for good reason, chose not to file a post-trial motion and chose not to appeal the jury's verdict. But that means that they are not… What do you think that good reason is? No matter what was going to happen, they were going to be responsible for or potentially responsible for judgment so far in excess of their policy limits that why waste the expense of defending any aspect of it? Just a cost-benefit analysis. Right, right. I mean, the gross verdict… You've answered my question. Okay. I don't want to distract you too much. Thank you, Your Honor. I want to emphasize, again, the procedural posture of this matter when the trial court granted a voluntary dismissal and denied leave to file. I think those rulings were premature. And the Skolnik case from the Supreme Court backs that up in terms of leave to file. These were claims that were entitled to a ruling on the merits. There's, at a minimum, factual questions as to them that I think should have survived dismissal. Unless there's any other questions at this time? Thank you. Mr. Williams, you have six minutes. Good morning, Your Honors. May it please the court, counsel. I'm Jason Orleans. I represent Carolina Casualty, one of the appellees. Carolina is the insurer of Total Dragonfly Express, the motor carrier defendant in the underlying case. It issued liability coverage in the amount of a million dollars. That policy is the subject of the underlying interpleader. Just some brief background. Carolina filed the interpleader in July of 2004. That was shortly after the catastrophic underlying trucking accident. Carolina recognized there were several claimants, injury, wrongful death, property damage, and so forth. Over the course of the ten years now that the interpleader has been pending, the complaints have been amended from time to time to conform the pleadings to the changing proofs, for instance, the satisfaction of the judgment, which I'll talk about in a moment. But Count 1 of the current vestige of the interpleader complaint is interpleader. Count 2 is declaratory judgment, which is not the subject of today's hearing. In October of 2011, it is pled in Count 1 in the Seventh Amendment complaint. Count Robinson satisfied the judgments of the State of Spurl, State of Sanders, and the other plaintiff, William Salute. And therefore, it's pled in the policy, in the complaint, that there's no further interest on the part of the State of Spurl and Sanders in the policy. And so I point that out just to have your honors understand that this issue has been ripe and been present as part of the pleadings for some time. From Carolina's standpoint, with all due respect to counsel for Spurl and Sanders, their positions are based on three primary misconceptions. The first misconception is that, as your honor pointed out, is that the pain and suffering awards remained against Dragonfly post-judgment. As it was clear in Judge Garrison's September 2009 memorandum opinion and order, that Spurl and Sanders did not meet their burden of proof. And that applies generally across the board to joint tort feasors. The second misconception is that Spurl and Sanders were wrongfully denied leave to file counterclaims. That presumes they had claims. And as the lower court identified, they no longer had claims once the judgments were completely satisfied. The third misconception is that Spurl and Sanders should not have been dismissed from the interpleader. But again, that flows directly from the denial of leave to file counterclaims. The voluntary dismissal, your honors, was the vehicle in which they could be dismissed from the case. It's also important to note at the outset that Spurl and Sanders had their opportunity to challenge the reduction of the award, of the judgment for conscious pain and suffering. They cross-appealed and abandoned that appeal. They had their opportunity, and they had their opportunity in the underlying case. They would argue, why should we do that when the other people didn't do anything, so we still have that judgment. Well, because we have a judgment that has been reduced generally, and now after the fact, once it's reduced, they want to split hairs and say, well, it doesn't apply to all the joint tort feasors. They didn't take any procedural action. That's their argument. Well, and that's a technical argument, but I think the substance outweighs that, and also the application in this case of the judgment as a unit rule. The Chmielewski case, which your honor pointed out, says where there's an interdependence of rights, clearly all joint tort feasor defendants have an interdependence of rights to make sure that the plaintiff proves their damages. And where the damages aren't proved as to one, that applies generally across the board. This isn't a case like the others where there's a substitution of judge and there's prejudice to one party, but there isn't prejudice to another. I submit there's some dispute over what the standard of review is here. I believe it is an abusive discretion standard, both for the denial of leave to file a counterclaim and for the voluntary dismissal of the interpleader. And that reason is because, first of all, the denial of leave to file a counterclaim supported by Illinois law, the ICS case, says you have to have a show of legally cognizant interest. And once the judgment was satisfied, there was no longer an interest. The court recognized that after hearing argument in the briefs and so forth. So discretion was used. Also, with regard to the voluntary dismissal, that was the vehicle by which the court could dismiss the estate of Sanders and Sperl. And based on Sanders and Sperl's opposition, obviously in briefing and argument that's part of the record, there was discretion applied in the context of this interpleader. And this may be an issue of first impression. However, there clearly was discretion used on the part of the underlying court. Thank you. What about the offers that were made? Yeah, I'll address that quickly, Your Honor. And really, the attempt to advance a breach of contract claim is really an effort to circumvent this judgment being reduced generally. The offers that were made were made shortly, the first offer was made shortly after the underlying judgment and was made to all three primary significant plaintiffs and said basically what the interpleader says, which is we have tendered our million dollars. It's the subject of the interpleader. Tell us how you want it to pay. At the time, there were millions of dollars that the judgment constituted. And then again, later on, after the trial court ruled in the post-trial motion, it was again resubmitted, but it was the same thing that the interpleader attempted to accomplish, which was divide the funds, the disputed funds. There could never be anything that was accepted because the reduced award of $250,000 apiece to Sperl Sanders, that was never offered. The lower court recognized there could never be an issue of fact or dispute over that. It's the gatekeeper of whether a claim can be made or asserted in the interpleader. This isn't a situation where we're talking about leave to file something that's brand new. The court had this case for eight years when it denied leave to file this counterclaim. It said, look, I'm the manager of these funds, and there could never have been something accepted sort of in hindsight because the judgments were reduced. The judge never said that, though, which you're saying he never said. Well, the judge indicated in her order that she reviewed all of the briefs, the argument with counsel, and all these arguments were made in the lower court, and the court, in the exercise of her discretion, said they can never get off the ground. They can never gain traction with these claims. We need to move the case forward and address the other claimants that have been waiting for 10 years to have their stakes adjudicated. But it is correct that she never really gave her very much of a rationale. Oh, the rationale? No, that is correct, Your Honor. She never explicitly gave a rationale. I think she implicitly gave the rationale that it's time to move the case forward. Unless you have any questions. Thank you, Your Honors. Mr. Sobczak? Good morning. You have six minutes. May it please the court, good morning, counsel. My name is Mark Sobczak. I represent the Appellees, the C.H. Robinson Appellees. In this case, we're here to ask that the decision of the lower court be affirmed. And in response to Mr. Lynch's argument, we've taken a slightly different tactic, although I agree with what Mr. Orleans has said, and I agree that the court has focused on the primary issue here, which is how can one corpus, how can a solitary corpus of evidence, be sufficient to prove a claim against one party, but the same evidence is then insufficient to prove a claim against another. And Mr. Lynch has focused heavily on the post-trial motion that Dragonfly did not file. But it's also worth noting that this judgment was not a final and appealable judgment. This was essentially an interlocutory judgment, because during trial, the court severed my client's counterclaims against C.H., or I'm sorry, against Dragonfly. So under Rule 304A, the judgment was subject to modification until Rule 304A language was entered, which was entered on September 15th. So to the extent that Mr. Lynch's argument is essentially that the trial court didn't have jurisdiction because a post-trial motion was not filed, the court did have jurisdiction. Additionally, I think the court has touched on the absurdity, for lack of a better phrase, of having a single corpus of evidence apply differently to two defendants, especially where the trial court in this case had the jurisdiction and had the power under Chmielewski and various other cases cited in our briefs to modify that judgment, and did. The language of the order is quite clear. And in the brief, Mr. Lynch pointed out that it was C.H. Robinson's motion, but the order is quite clear that it was a finding that Spurl and Sanders failed to prove. With respect to the counterclaims issue, they're meritless. And basic contract law establishes that they're meritless. For a valid contract, you need to offer acceptance and consideration. Here, for the various reasons discussed, there's no viable claim against Dragonfly by Spurl and Sanders, so there's no consideration. The offers here were made in March and September of 2009. They were not accepted until October of 2011. Under Illinois law, offers that do not state a definite time for acceptance expire after a reasonable time, especially here, where in the interim, at least one of the parties that had accepted, Ms. Sanders, had actually been paid the entire judgment, and the judgment had been satisfied. Additionally, the acceptances, the purported acceptances by Spurl and Sanders varied the terms of, if you call it an offer, the original offer. In Illinois, an acceptance that varies the terms of the offer is a counteroffer. It's not acceptance. The claims are on their face. They lack merit, and the trial court was under no obligation to allow Spurl and Sanders to file meritless claims. And to the extent that Mr. Lynch argues or has argued in the briefs that the proper vehicle to determine that is through a 2615 motion, the various cases regarding amendment, although this is not an amendment case, clearly provide the court a gatekeeper role with respect to meritless claims. Additionally, it is worth noting that Section 2-1009A of 735.5-2-1009A grants plaintiffs an almost, not completely, but an almost virtually unlimited right to voluntarily dismiss. The only exceptions that my research has uncovered, I should say, are where granting that dismissal would somehow conflict with Illinois Supreme Court rules or where there is a pending motion that could dispose of the whole claim, which is really just 2-1009B, which allows the court to hear a pending dispositive motion prior to passing on a motion to voluntarily dismiss. When the case is boiled down, the plaintiffs, Spurl and Sanders, received all the compensation to which they were entitled. So, unless the court has any additional questions. Mr. Lewin, good morning. My name is Dave Lewin. I represent Deanne Henry, Lou Anne Whitner-Black, and Toadelle Dragonfly. I've got three minutes to discuss just one narrow issue, and that's whether my client was required to file this post-trial motion in order to be bound by the decision in the other post-trial motion. To get to that, I think you need to look at two important factual matters. The first is what was the basis of liability against the party that filed as opposed to my clients. This court has previously ruled in Spurl v. C.H. Worldwide, decided by this court in 2011, that liability was vicarious only. There was no independent act by C.H. Robinson that caused the liability. The liability, as this court said, was exclusively derivative. In fact, Spurl did a great point in their pleading. They said, in the second amendment complaint, C.H. Robinson was vicariously liable for the acts or omissions of Henry. The other point, as this court has discussed and we've heard lengthy argument on, is that the plaintiffs did not prove the survival counts. So you have liability arising derivatively only, or exclusively derivatively, and no proof. Counsel has talked about this idea of judgment as a unit, and as this court has discussed, the Chmielewski case said, well, you need to look at certain factors. Is there an independence of rights? I can't imagine more of an interdependence of rights than liability that's vicarious only. Would it be prejudicial or inequitable? You know what, my client probably should have filed that post-trial motion. I wasn't involved in that time. I probably would have told them to file a one-page, something get it on file. But still, are we left with something that's inequitable or prejudicial? The plaintiff wants to recover in a court for something that was never proven. The plaintiff wants to take advantage of the error of counsel. Pardon me? They want to take advantage of, perhaps, a mistake by legal counsel. I understand that. But the result that we're left with was that, and it's not like the underlying motion wasn't fully briefed. It was fully briefed. It was fully argued. They went full bore on that. I understand that a tactical decision was made on the appeal. But in terms of the post-trial motion itself, it's not like they dropped it because they saw that my client didn't file the post-trial motion. There's no argument made that it wasn't fully briefed, that there wasn't a full hearing on this, that they didn't have their fair chance in court. I've briefed this at length. I've got several cases to talk about. I really can't talk about that in one minute. I do want to talk about the Powell case versus Dean. That seems to be the plaintiff's primary case. Defendants in that case, that's the case where the party filed the SOJ, substitution of judge. The key difference there is that defendants failed to show they were prejudiced. Here, we have shown prejudice. We should be bound by this. Like I said, I think we've covered this at length. If anyone has any questions, I'm happy to address this. Thank you. Thank you, Your Honor. Thank you. Thank you, Your Honor. I'll try to pick up where counsel left off with the Powell case. And I think even though it's not a post-trial motion case, it is very informative because the issue of no prejudice that was found as to some of the defendants was because those defendants did not also move for substitution of the trial judge. The court found that because they had never filed a motion, they could not appeal that error. And I also think it's important when we talk about an interdependence of rights and vicarious liability, factually, Powell was very similar to this case. It was a tragic trucking accident, and defendants included the truck driver, his company, and Dean Foods as another principal in that transaction, all represented by one lawyer at trial. Nevertheless, our Supreme Court found that all of them had separable rights, either because some of those defendants had already filed substitution motions, and so were not entitled to them. The one who filed it was no longer entitled to that motion, and the other defendants never filed their own motions. There is no authority that has been cited, or that I'm aware of, where a party was able to seek a relief without ever filing a post-trial motion. There's been kind of this assertion that the judgment was reduced generally. Even assuming that Judge Garrison did still have jurisdiction to reduce the judgment, there's no indication in the order that he reduced it generally. Instead, the indication is that he's talking about C.H. Robinson. C.H. Robinson's post-trial motion, C.H. Robinson's JNOB, and the judgment as to C.H. Robinson. So there's been nothing in the record that shows that the judgment was reduced generally. There was a decision made to not fight the jury verdict at all by Henry and by Dragonfly, and that means that they were fully and finally fixed in their rights, that they were going to be responsible for that entire judgment. And again, the second offer that came from CCIC, Dragonfly, and Henry was after that post-trial motion had been granted in part, but there was no qualifications put on it as to what portion of the judgment, as to when it could be accepted, et cetera. And it's clear from the very interpreter itself and from the letters, what CCIC wanted is we've got our million-dollar policy. That's not enough. If you guys can agree on how much you're going to accept, accept it, and we'll pay you. And that's what was done. And it's done based on a valid claim for conscious pain and suffering that they never chose to attack by way of post-trial motion. And the liberty of that claim, again, the post-trial motion had been ruled on by the time that they sent that second letter offering to make payment, and there was no qualification. And that's why there's a valid consideration. I know Council mentioned a couple of issues that really boil down to, Council Chief Robinson, that is, that really boil down to factual arguments. You know, was the time for acceptance reasonable? Did the acceptance vary the terms? I think, number one, those are all factual questions for the trial to fact-resolve. Number two, an offer that's been around for seven-plus years and that I think Council would agree if on the day before C.H. Robinson had made their payment, if it was accepted then, it would have been valid. That it was accepted on the same day or a few days later, I think, at a minimum, is a factual question that a trial to fact has to resolve. As to varying the terms, again, I think on the merits that fails, but because the only terms were, don't ask me for more than a million dollars, and that was not done. And, again, as Council's own authority in the briefs demonstrates, that's a factual question as to whether there was a variance in the terms or not. The finding by Judge Garrison on the post-trial motion was that there was not sufficient evidence, not that there was no evidence whatsoever. It was certainly sufficient for Judge Garrison to allow the matter to go to the jury. It went to the jury. The jury found specifically for both Spurl and Sanders that there was conscious pain and suffering, and Dragonfly and Henry chose to never challenge those findings. Again, I think the question raised by CH Robson as to the jurisdiction of the trial court and whether Judge Garrison still had jurisdiction, although I think he didn't, the better question might be, did he do anything with that jurisdiction if he had it? And the indication is, without any motion from Dragonfly, without any motion from Spurl, without any motion from Henry, he did not do anything. He did not reduce the judgment as to them. They had agreed to pay it to the extent that they could with their insurance proceeds. And so without ever filing a motion, they should not be entitled to relief. And, again, there's kind of been some questions as to whether or not that was a mistake on the attorney's part, and I don't know that it was. I think it's a recognition that they're going to be, they're on the hook for their million dollars, and now I think this carrier that insured the driver that caused massive injuries to many families is kind of trying to get out of this without ever having to pay that policy that supposedly for many, many years they were trying to pay. Unless there's any other questions, I would ask that you reverse the orders below and remand for further proceedings. Thank you, Mr. Lynch. Thank you. We thank all of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a point of change.